In Re

DAMARISCOTTA-NEWCASTLE WATER COMPANY.

Lincoln.    Opinion March 31, 1927.

*In case of a sale and purchase of the property and franchises of a public utility under section 86 of chapter 51, R. S., the purchaser or purchasers with necessary associates may organize themselves into a corporation, and the proceedings of such reorganization are under the direction of the Court and not of the Public Utilities Commission.*

*The transfer of the property and franchises by the purchasers to the new corporation organized under section 86 of chapter 51, R. S., is not a purchase or acquisition of property within the meaning of section 37 of chapter 55, nor one of the purposes for which capital stock may be issued and over which the Public Utilities Commission has jurisdiction.*

In the instant case the acquiring of the franchises and property, the organization of the new corporation, the fixing of the amount of its capital stock and the determination of the proper amount to be issued to the purchasers and incorporators are a part of the reorganization, and must be done under the direction of and with the approval of the Court, and does not require the approval of the Public Utilities Commission.

On exceptions by the Damariscotta-Newcastle Water Company to rulings of the Public Utilities Commission, involving the interpretation of section 86 of chapter 51, R. S., and section 37 of chapter 55, R. S., certified to the Chief Justice under section 55 of chapter 55, R. S.    Exceptions overruled.

The case appears in the opinion.

*McLean, Fogg & Southard,* for petitioner.

Public Utilities Commission not appearing.

SITTING: WILSON, C. J., PHILBROOK, DUNN, STURGIS, BARNES, BASSETT, PATTANGALL, JJ.

WILSON, C. J.    This case, involving exceptions to rulings of the

Public Utilities Commission, was certified to the Chief Justice under sec. 55 of chapter 55 R. S.

Some time prior to April 27, 1924, a receiver was appointed under secs. 82-86 of chapter 51, R. S. of the Twin Village Water Company which had the franchise to furnish water to the towns of Damaris-cotta, Newcastle and Bristol. On April 27th, 1924 the receiver hav-ing been duly authorized to sell at public auction all the property and franchises of the Twin Village Water Co., was ordered by the court to accept the bid of James R. Byrne of $23,000 as the highest bidder.

Under sec. 86 of chapter 51 R. S., the purchaser at such sale hav-ing acquired all the franchises of the old corporation including the right to exist as a corporation may "reorganize the same" as the lan-guage of the statute is, "under the direction of the court." We con-strue this to mean that the purchaser or purchasers with the neces-sary associates may organize themselves into a corporation taking over the property and franchises of the old. That it was in this case transferred direct to the new corporation instead of the purchaser makes no difference. The proceedings of reorganization are under the direction of the Court and not of the Public Utilities Commission.

In the instant matter it appears to be assumed in the bill of excep-tions that the Damariscotta-Newcastle Water Co. was organized under sec. 86 of chapter 51 by Mr. Byrne the purchaser. On June 27, 1924 he gave notice to the receiver to make the deed conveying the franchises and property to the new corporation upon the payment of $20,700, apparently ten per cent of the purchase price having already been paid. Whether any direction or approval was given by the court to the reorganization as a whole does not appear, though out of what may have been abundance of caution the approval of the transfer by the Public Utilities Commission was obtained.

On June 30th, 1924, the Damariscotta-Newcastle Water Co. petitioned the Public Utilities Commission for authority to issue bonds to the amount of $50,000, and later to execute an open mort-gage to secure bonds to the amount of $100,000 and to issue to Mr. Byrne capital stock of the new company to the amount of $100,000 less $20,700, the sum paid by the new company for the property and franchises in cash, being, as it claims, the difference between the sum so paid and the reproduction cost of the property less depreciation. The issue of bonds up to a certain amount was approved by the Com-

mission, but its approval of the issue of the capital stock was withheld upon the ground, as stated in its decree, that the purpose set forth in the petition is not one for which the Utilities Commission may authorize the issuance of capital stock. .It is this ruling which is challenged by the exceptions.

The purpose for which it is desired to issue the stock, as set forth in the petition, "is to be used in full payment of all rights and equities of Mr. Byrne as a consideration for his permitting the transfer of the franchises and property of the Twin Village Water Co. to be made directly to this Company and represents the fair replacement value of the properties."

The theory of the petitioner is that the transaction was a sale from the receiver to Mr. Byrne and from Mr. Byrne to the new corporation and the stock to be issued was in part.payment of the property and franchises thus acquired by the new company. ·

But we think that the transfer by the purchaser at a receiver's sale to the corporations organized under sec. 86 of chapter 51 is not a "purchase or acquisition of property" within the meaning of sec. 37 of chapter 55 nor one of the "purposes authorized by law" for which capital stock may be issued and over which the Public Utilities Commission has jurisdiction.

The sale by the receiver of the property and franchises and the organization of a new corporation to hold the same under sec. 86 of chapter 51 is under the direction of the court. It requires no approval or consent of the Public Utilities Conmmission. Nor does the issuing of capital stock.representing the franchise and property of the corporation so acquired. The approval of the court alone is sufficient.

As to whether under any circumstances the issuing of bonds solely to secure cash for the payment of purchase price may be a part of a reorganization it is not necessary to decide, but bonds to be issued in part to acquire additional property or to make extensions and repairs must have the approval of the Public Utilities Commission.

The acquiring of the franchises and property, the organization of the corporation, fixing the amount of capital stock, the division of it into shares, and the determining of the proper amount to be issued to the purchasers and incorporators as representing the property and franchises thus acquired were, we think, a part of the reorganization and must be done under the direction of and with the approval of the court.

Whether such was done in this instance does not appear from the bill of exceptions; but it is not necessary to the disposal of the case. In any event under such a sale and reorganization the Public Utilities Commission have no.control over the sale, transfer to or organization of the new corporation or the issuing of the capital stock representing solely the property and franchises.

The petitioner, therefore, was not aggrieved by the Commission withholding its consent to the issuing of capital stock for the purposes set forth in the petition.

*Exceptions overruled.*